IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION, | CV 19-107-BLG-SPW-TJC |
| Cross-Claimant, | |
| vs. | **ORDER** |
| AECOM ENERGY & CONSTRUCTION, INC., | |
| Cross-Defendant. | |

Before the Court is AECOM Energy & Construction, Inc.'s Motion to

Quash a subpoena issued by Exxon Mobil Corporation to Delta Consulting Group

Inc. ("Delta"). (Doc. 41.) At issue is the production of supporting documents used

to prepare AECOM's pre-litigation claim against Exxon. (Doc. 42 at 5.)

The matter is fully briefed and ripe for review. For the following reasons,

the motion is granted.

## I.   Background

This matter derives from a suit originally brought by Diamond Refractory

Services, LLC against AECOM Energy & Construction, Inc. ("AECOM"), Exxon

Mobil Corporation ("Exxon"), Dan Stetler, Thomas Bunting, Jonathan Parsons,

and John/Jane Doe Defendants 1 through 5 in the Montana Thirteenth Judicial

District Court for Yellowstone County on August 5, 2019. (*See* Doc. 11.) Exxon

filed an answer as well as a crossclaim against AECOM, alleging various causes of action relating to a contract for turnaround services at Exxon's Billings Refinery ("Project").  (*See* Docs. 12, 12-1.)  Diamond Refractory agreed to settle the claims against all defendants and filed a motion to dismiss in state court[1] on October 8, 2019, leaving the Exxon's crossclaim against AECOM unresolved.  (*See* Doc. 1-3.)  The next day, AECOM removed the action to this Court based on diversity of citizenship.  (Doc. 1.)  AECOM subsequently filed its answer to Exxon's crossclaim, and asserted a crossclaim against Exxon.  (Doc. 14.)

The dispute between Exxon and AECOM arises from a November 2017 contract between the parties wherein AECOM agreed to perform general construction services at the Exxon oil refinery in Billings, MT.  During the course of the project, a dispute arose between the parties regarding performance of the contract.  AECOM alleges that it submitted approximately $68 million worth of change orders that Exxon either rejected or ignored.  Exxon, on the other hand, alleges that AECOM failed to perform the work in a safe and efficient manner, resulting in defective work and substantial delay in completion of the project.

---

[1] For reasons unclear to the Court, Diamond Refractory also filed a Motion to Dismiss this action as to all defendants on October 31, 2019.  (*See* Doc. 17.)  The Court granted the motion November 1, 2019, again leaving Exxon and AECOM's crossclaims live controversies ripe for adjudication.  (Doc. 19.)

AECOM ultimately retained Delta Consulting Group ("Delta") to assist with the preparation of a claim against Exxon for amounts AECOM asserted were due under the contract.  AECOM then submitted a claim letter to Exxon on July 9, 2019, asserting that $144,134,404.63 remained due under the contract.  Attached to the claim letter was a report titled "Cost and Entitlement Analysis," prepared by Delta, outlining alleged changes, delays, productivity issues, and increased costs incurred on the project.  Information used in preparation of the Delta report is the focus of Exxon's requests for production and subpoena, as well as AECOM's motion to quash and for protective order.

On August 8, 2019, Exxon sent a letter rejecting AECOM's claim.  Exxon then filed its crossclaim against AECOM on August 30, 2019.

In the course of discovery, Exxon served requests for production of documents, which included two requests for documents related to materials Delta used to prepare its Cost and Entitlement Analysis Report ("Delta Report") for AECOM's claim against Exxon.  (Doc. 43 at ¶ 7.)  Request No. 20 read: "All documentation reviewed by Your consultant, Delta Consulting Group, for the purpose of preparing the July 9, 2019 Cost and Entitlement Analysis Report."  (*Id.*) AECOM objected under Fed. R. Civ. P. 26(b)(4)(D), and further objected to the request seeking "information that is protected by the attorney-client privilege and attorney-client work product doctrine …"  (*Id.*)

Request No. 21 also sought "[a]ll support and analysis files prepared by Delta Consulting Group in their native form … contained in the July 9, 2019 Cost and Entitlement Analysis Report prepared by Delta Consulting Group." (*Id.*) AECOM again objected for the same reasons. (*Id.*)

On November 4, 2020, Exxon served Delta with a third-party subpoena. (*Id.* at ¶ 9; *see* Doc. 43-2.) The subpoena commanded Delta to produce:

> Any and all documents AECOM provided to you prior to July 9, 2019 relating to the Turnaround work performed at Exxon Mobil's Billings, Montana refinery per the November 30, 2017 contract signed by AECOM and Exxon Mobil.

(Doc. 43-2.)

AECOM then filed the instant motion on November 23, 2020 to quash the subpoena on grounds that Delta was retained in anticipation of litigation, and the subpoenaed documents are shielded from discovery. (Doc. 41.) AECOM has not disclosed, and states it will not disclose, Delta as a testifying expert, but instead considers the consulting group a non-testifying, consulting expert retained in anticipation of litigation. (Docs. 42 at 2; 43 at ¶ 10.)

## II.    Legal Standards

AECOM's Motion to Quash Subpoena and for Protective Order is brought pursuant to Fed. R. Civ. P. 45(d)(3)(A) and 26(c). Rule 45(d)(3)(A) provides in pertinent part that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that ... (iii) requires disclosure of

4

privileged or other protected matter, if no exception or waiver applies."  The

burden of persuasion is on the moving party.  *CQI, Inc. v. Mountain W. Farm*

*Bureau Ins. Co.*, 2010 WL 11530839, at *2 (D. Mont. Aug. 13, 2010).

Rule 26(c) also permits a party to seek a protective order upon certification

of good faith meet and confer with the opposing party, and a showing of good

cause to protect "from annoyance, embarrassment, oppression, or undue burden or

expense, including … (A) forbidding the disclosure or discovery [and] (D)

forbidding inquiry into certain matters, or limiting the scope of disclosure or

discovery to certain matters."

AECOM argues the Delta report is protected from disclosure under Fed. R.

Civ. P. 26(b)(4)(D), which governs discovery of facts known or opinions held by

experts who are employed only for trial preparation, and provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover
> facts known or opinions held by an expert who has been retained or
> specially employed by another party in anticipation of litigation or to
> prepare for trial and who is not expected to be called as a witness at
> trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
> (ii) on showing exceptional circumstances under which it is
> impracticable for the party to obtain facts or opinions on the same
> subject by other means.

## III.  Discussion

In support of its motion, AECOM argues first that Delta is a non-testifying

expert retained in anticipation of litigation, hence Rule 26(b)(4)(D)'s "safe harbor"

5

shields Delta from discovery.  (Doc. 42 at 7, 10.)  Second, AECOM argues Exxon

cannot show exceptional circumstances that warrant discovery of Delta's

documents, as Rule 26(b)(4)(D)(ii) permits.  (*Id.* at 11.)  Last, AECOM asserts that

it has not waived Rule 26(b)(4) protections.  (*Id.* at 13.)

Exxon appears to concede AECOM's first two arguments.  (*See generally*

Doc. 48 at 9-14.)  It has not offered any contrary argument regarding Delta's status

as a non-testifying expert who was retained or specially employed in anticipation

of litigation.  Nor has Exxon argued that exceptional circumstances warrant

disclosure of the documents requested.

Instead, Exxon argues that AECOM waived the non-testifying expert

privilege.  (Doc. 48 at 14.)  Exxon asserts that AECOM's use of the Delta report,

which "included an analysis of changes, delays, and productivity issues on the

Project to substantiate [AECOM's] claim," effectively waives any privilege.  (*Id.*)

"The burden of proving any claimed waiver of protection … rests on the party

seeking discovery."  *U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC,*

268 F.R.D. at 617–18).  Exxon has failed to sustain its burden here.

Both parties acknowledge that the Ninth Circuit has not weighed in on

whether, and in what circumstances, a party may waive the non-testifying expert

privilege.  Nevertheless, Exxon relies on several district court decisions which

have recognized such a waiver.  See e.g., *Murray Southern Route Maritime, S.A.*

6

2014 WL 1671581 at *1 (W.D. Wash. Apr. 28, 2014) (finding no "persuasive reason why the non-testifying expert privilege should be maintained despite a knowing and intelligent disclosure when virtually every other privilege, including the attorney-client privilege and work product protections, are subject to waiver."). According to Exxon, cases finding a waiver demonstrate that the issue is largely dependent on whether a party "attempts to use the non-testifying expert's opinions or work product to its advantage in the relevant litigation." (Doc. 48 at 11.)  In support of this proposition, Exxon principally relies on *In re iPhone/iPad Application Consumer Priv. Litig.*, 2012 WL 5897351, at *8 (N.D. Cal. Nov. 21, 2012) where the plaintiff actually attached a copy of an expert's report to their complaint.  While the report was later not attached to a third amended complaint, the court found the allegations from the report had not been removed, and the plaintiffs continued to rely upon the report for their theory in the case.  *Id.* at *8. Exxon also relies on *Zeiger v. WellPet LLC,* 2018 WL 1011156 at *3 (N.D. Cal. April 10, 2018) (non-testifying expert privilege waived where plaintiffs explicitly alleged the results of an expert's testing in their complaint and relied on those results to overcome a motion to dismiss); and *In re Morning Song Bird Food Litig*, 2015 WL 12791470 at *7 (S.D. Cal Jan. 23, 2015) (defendants attached summaries of the consulting expert's assessment to their motion to dismiss the amended complaint).

7

Exxon argues that AECOM has similarly used the Delta report to its advantage in this litigation. (Doc. 48 at 14-15.) In support, Exxon points to two general factual allegations in AECOM's Answer and Crossclaim, and also alleges that one of AECOM's causes of action (Count VII) is premised on the Delta report. (*Id.* at 5-7.) Exxon further references two responses to interrogatories where it argues AECOM "at least by implication" relied on the report. (*Id.*)

Specifically, with respect to the allegations in AECOM's Answer and Crossclaim, Exxon contends the following general allegation in paragraph 114 incorporates the Delta Report:

> 114. On July 9, 2019, after AECOM had determined all of the costs AECOM and its subcontractors had incurred, AECOM submitted a detailed, *121-page claim package* and invoice to ExxonMobil for $144,134,404.63. ExxonMobil has not paid any portion of this invoice. (Emphasis added.)

(*Id.* at 5; *see* Doc. 14 at ¶ 114.) Next, Exxon asserts that Paragraph 132 of Count II – Breach of Contract is taken directly from the Delta Report:

> 132. As a result of ExxonMobil's numerous changes, including late drawings, the duration of the project increased from 7 weeks to 17 weeks, and the cost of the work increased from about $32.5 million to over $160 million. Both increases were far beyond what AECOM could have reasonably anticipated at the time it bid the work and entered into the Purchase Order.

(*Id.* at 6; *see* Doc. 14 at ¶ 132.)

Exxon also contends Count VII – Violation of the Prompt Payment Act is premised on the Delta report. (*Id.*; *see* Doc. 14 at ¶¶ 186-194.)

8

As for responses to interrogatories, Exxon contends AECOM relied on the Delta report twice in its responses. (*Id.* at 6-7.)  In response to Interrogatory No. 3, AECOM generally referenced "its claim submitted to Exxon on July 9, 2019"; and responding to Interrogatory No. 8, AECOM referenced specific pages of its claim letter sent to Exxon.  (*Id.*)

   AECOM counters that reference to the claim package in ¶ 114 is merely "part of the history of correspondence between parties."  (Doc. 52 at 6.)  AECOM further asserts that its allegation in ¶ 132 did not derive from the Delta report but from the Project's Cost Report, which was disclosed and cited in response to an interrogatory.  (*Id.* at 6-7.)  As to its Prompt Payment Act claim in Count VII, AECOM argues that cause of action, as well as the entire Crossclaim, omits any reference to the Delta Report.  (*Id.* at 6.)  AECOM maintains that "cause of action will turn on whether or not Exxon was obligated to pay [AECOM's] invoice, which again will turn on [AECOM's] damages analysis in this litigation."  (*Id.* at 7.)  Last, regarding Interrogatory Nos.  3 and 8, AECOM points out that its interrogatory responses did not reference the Delta report, and its response to Interrogatory No. 8 explicitly referred to two pages of the claim letter itself, not the Delta report attached to the letter  (*Id.* at 8).

In short, AECOM argues that, while its pre-litigation claim relied on the report, its Crossclaim is not based on the report.  AECOM asserts that the amount

9

of damages and basis for liability in this action will be the subject of expert

testimony to be disclosed by the Scheduling Order's deadline and not based on

Delta or the Delta report.  (*Id.* at 4.)

The Court finds AECOM's arguments persuasive.  AECOM disclosed the

Delta report prior to litigation but has not asserted the report in its pleadings or

otherwise in this judicial proceeding.  Unlike the cases cited by Exxon, AECOM

has not attached the report to its pleadings, or relied on the report in connection

with dispositive motions in the case.

This case is more similar to *ExxonMobile Oil Corp. v. S. Cal. Edison Co.,*

2014 WL 12629792 (C.D. Cal Feb. 4, 2014), relied upon by AECOM.  There,

*ExxonMobil* submitted administrative claims for damages to Cal. Edison.

*ExxonMobile,* 2014 WL 12629792 at *1.  *ExxonMobil*'s counsel also submitted

reports from a third-party consultant in support of the claims.  *Id.*  In the course of

subsequent litigation, Cal. Edison sought to obtain the underlying documents

prepared by the consultant relating to the reports.  *Id.  ExxonMobil* objected, and

the court ultimately denied Cal. Edison's motion to compel.  *Id.*  Despite the fact

that the reports had been provided in support of its administrative claims, the court

held there was no waiver of the non-testifying expert privilege, and the underlying

documents were protected from disclosure.  *Id.* at *2.

The court reached a similar conclusion in *In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28 (D. Mass. 2006). In that case, the defendants provided the plaintiffs with a report prepared by a non-testifying expert. *PolyMedica*, 235 F.R.D. at 30. Like here, the plaintiffs then served the consulting expert with a subpoena, seeking the production of documents underlying the creation of the report. *Id.* The defendants opposed the subpoena, and the plaintiffs' subsequent motion to compel was denied by the court. *Id.*

In so holding, the court pointed out that Fed. R. Civ. P. 26(b)(4) recognizes that it is fair to allow a party to discover a testifying expert's opinions and bases for those opinions prior to trial. *Id.* at 33. Such discovery permits the opposing party the opportunity to prepare to cross examine the witness at trial. *Id.* But the court said that fairness does not similarly require discovery of a non-testifying expert's opinions, which will not be presented in court. *Id.* On the contrary, "fairness requires that each side fully prepare its own case and not try to benefit through discovery from the other side's better preparation." *Id.*

As applied to the case at hand, the court said "subject-matter waiver does not apply to [Defendant's] documents underlying and related to its report because there is no evidence that the Defendants sought to make use of the report in a judicial proceeding. [The expert] is not testifying, and there is no showing that the Defendants put the report at issue." *Id.* See also, *U.S. Inspection Servs., Inc.*, 268

F.R.D. at 625 ("courts have been unwilling to find subject-matter waiver of a non-testifying expert's undisclosed documents where there has been partial disclosure of the expert's materials—based ultimately on principles of fairness.")

As in *ExxonMobil* and *PolyMedica*, the Delta report was provided to Exxon prior to suit, but AECOM has not used the report to advance its claims in this case. No waiver of the privilege under Rule 26(b)(4)(D) has occurred.

## IV.    Conclusion

The Court finds that Exxon has not met its burden to show that an exception to the safe harbor applies, or that AECOM has waived safe harbor protections. Therefore,

IT IS ORDERED, pursuant to Fed. R. Civ. P. 45(d)(3)(A), that AECOM's Motion to Quash (Doc. 41) is GRANTED.  Exxon's third-party subpoena issued to Delta Consulting Group is QUASHED.

IT IS FURTHER ORDERED, pursuant to Fed. R. Civ. P. 26(c)(1)(D), that discovery shall not be permitted into matters relating to the work Delta performed for AECOM in preparation of the Delta report.

**IT IS ORDERED**.

DATED this 29th day of April, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge