IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION, | |
| Plaintiff/Crossclaim Defendant, | CV 19-107-BLG-SPW |
| vs. | |
| AECOM ENERGY & CONSTRUCTION, INC. and AECOM, | ORDER ON AECOM'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| Defendants/Crossclaim Plaintiffs. | |

Defendants and Crossclaim Plaintiffs AECOM Energy & Construction, Inc. and AECOM ("AECOM") filed a Motion for Attorneys' Fees and Costs. (Doc. 298). AECOM seeks a total of $12,758,859 in attorneys' fees and $5,953,366 in costs. (Doc. 299 at 31–32; Doc. 302 at 10; Doc. 349 at 20). In support of its Motion, AECOM submitted summaries of fees and costs along with supporting affidavits and spreadsheets. (*See* Docs. 299-1–299-19, 302-1–302-6). Plaintiff and Crossclaim Defendant Exxon Mobil Corporation ("Exxon") opposes the Motion. (Doc. 302). The Court held an evidentiary hearing on November 12, 2025, at which Laura LoBue, John "Buzz" Tarlow, John Crist, and Adam Lewis testified for AECOM.

For the reasons set forth below, the Court concludes that AECOM is entitled to recover attorneys' fees for its pretrial and trial work but declines to award posttrial

1

fees and reduces the overall award to reflect AECOM's partial success. The Court further finds that AECOM is not entitled to recover expert witness or e-discovery costs.

Accordingly, AECOM's Motion is granted in part and denied in part. AECOM is awarded $5,212,902 in attorneys' fees and $0 in costs.

## I.    Background

On November 13, 2017, Exxon entered into a Purchase Order contract ("Purchase Order") (Doc. 138-1) with AECOM to perform inspection and maintenance turnaround services at its oil refinery in Billings, Montana. (Doc. 27 at 2–3). Under the original terms, AECOM was to receive a lump sum payment of $32,595,765 and complete all mechanical work within seven weeks. (Doc. 138 at 5). However, the turnaround extended to 17 weeks. (Doc. 143 at 8).

Following completion, on March 26, 2019, Exxon notified AECOM that it was asserting over $79 million in setoff claims against any amounts AECOM claimed under the Purchase Order. (Doc. 138-34). Exxon paid AECOM $41,500,227.37 but withheld further payment, citing "substantial losses" allegedly caused by AECOM's breach. (Doc. 12 at 2–3).

In response, on April 25, 2019, AECOM recorded a construction lien against Exxon's Billings refinery for $132,025,306.82. (Doc. 151 at 12). Subsequently, on

July 9, 2019, AECOM submitted a claim package and invoice to Exxon totaling $144,134,404.63. (Doc. 151-39 at 121).

Both parties filed competing claims. Exxon sought $93,042,365 for breach of contract and gross negligence or willful misconduct by AECOM. (Doc. 218 at 6). AECOM pursued $102,855,577 in breach-of-contract damages and argued under an account stated theory and the Prompt Payment Act ("PPA"). (*Id.* at 12–17).

The case proceeded to a jury trial beginning January 13, 2025. After 14 days, the jury returned its verdict on February 1, 2025. (Doc. 265). The jury found in favor of AECOM on its breach of contract, PPA, and account stated claims, awarding $64 million. (*Id.*). It also found in favor of Exxon on its breach of contract claim, awarding $20 million, but rejected Exxon's claims of gross negligence or willful misconduct and awarded no consequential damages. (*Id.* at 2).

Following both parties' Rule 59(e) Motions to Amend/Correct the Clerk's Judgment (Docs. 287, 291), the Court entered final judgment reflecting a net award of $44 million to AECOM. (Doc. 312).

On March 25, 2025, AECOM moved for award of attorneys' fees and costs (Doc. 298), initially seeking $12,668,893 in fees, $1,057,873.78 in e-discovery costs, and $4,895,492 in expert witness costs. (Doc. 299 at 21, 31–32). In its reply, AECOM revised its fee request to $12,123,027.06 to correct a calculation error. (Doc. 302 at 10). During the hearing and in subsequent briefing, AECOM further

expanded its request to include $635,832 in fees for posttrial work and now seeks $12,758,859 in attorneys' fees and $5,953,366 in costs. (Doc. 349 at 20).

After AECOM's Motion became ripe, the Court ruled on several posttrial motions. On Exxon's Rule 50(b) Renewed Motion for Judgment as a Matter of Law (Doc. 285), the Court held that AECOM's PPA claim failed as a matter of law. (Doc. 309 at 14). The Court concluded that the invoices fell outside the statute's scope because they were not part of the regular progress payments or timelines contemplated by the PPA. (*Id.*). Because the Court resolved Exxon's motion solely as a matter of law, it presumed the jury had resolved any factual disputes in favor of the verdict and left those findings undisturbed. (*Id.*).

## II. Discussion

The Court first addresses the admissibility of the hearing exhibits discussed in the parties' supplemental briefing and then turns to AECOM's requests for attorneys' fees and costs.

### A. *Admissibility of Hearing Exhibits*

At the hearing, the Court admitted Exxon's Exhibits 10, 11, and 13, and accepted supplemental briefing regarding the admissibility of AECOM's Exhibits 1 and 2 and Exxon's Exhibit 12. The Court now concludes that neither AECOM's Exhibits 1 and 2 nor Exxon's Exhibit 12 are admissible.

### 1.    AECOM's Exhibits 1 and 2

AECOM sought to introduce Exhibits 1 and 2—two spreadsheets detailing an additional $836,355.07 in fees for posttrial motion work.[1]  At the hearing and in supplemental briefing, Exxon objected on the grounds of untimely disclosure and excessive redactions, and also challenged the magnitude of the request.  (*See* Doc. 346 at 4–16; Doc. 348 at 3–8).  The Court agrees that the exhibits were not timely disclosed and excludes them on that ground.

"A trial court has great latitude in the admissibility of evidence." *United States v. Gilley*, 836 F.2d 1206, 1213 (9th Cir. 1988).  Under Federal Rule of Evidence 403, district courts have "considerable leeway" to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *United States v. Sullivan*, 159 F.4th 579, 590 (9th Cir. 2025) (quoting Fed. R. Evid. 403).  To avoid unfair prejudice, evidence must be disclosed in a manner that affords the opposing party "a fair opportunity to address or rebut it." *Brown v. Uttect*, 530 F.3d 1031, 1037 (9th Cir. 2008).  A district court may therefore decline to consider untimely evidence. *Id.*

Here, the Court finds that Exhibits 1 and 2 were not timely disclosed.  The spreadsheets cover posttrial fee requests from February through July 2025, yet AECOM did not provide them to Exxon until November 11, 2025—the day before

---

[1] AECOM ultimately requested $635,832 in posttrial fees.

the hearing. (Doc. 347 at 8). AECOM offers no justification for this delay, even though it anticipated submitting a supplemental fee request as early as April 2025 and possessed all necessary information by July 2025. (*See* Doc. 302 at 15).

As Exxon notes, the spreadsheets did not contain "information to which Exxon had prior access or information that was easily synthesized at the last minute in the midst of other hearing preparation." (Doc. 346 at 9). The exhibits include "407 time entries by 12 lawyers from two different law firms over the course of six months." (*Id.* at 10). Preparing to meaningfully address or challenge that volume of information on one day's notice was not feasible.

The Court is unpersuaded by AECOM's suggestion that any prejudice was cured by the time that passed between the fee hearing and the supplemental briefing. (*See* Doc. 347 at 12). The Court agrees with Exxon that while "[t]he post-hearing briefing is undoubtedly helpful in developing certain objections . . . . that does not change the fact that AECOM's late disclosure of Exhibits 1 and 2 severely hampered Exxon's ability to delve into the details of those exhibits at the hearing." (Doc. 348 at 6). The passage of time does not change the fact that briefing "is no substitute for live cross-examination of a witness about the exhibits' deficiencies." (*Id.* at 6–7). The late disclosure therefore prejudiced Exxon by hampering its ability to cross-examine witnesses about the posttrial fee requests.

Accordingly, AECOM's Exhibits 1 and 2 are excluded under Rule 403 because their probative value is substantially outweighed by the unfair prejudice resulting from their untimely disclosure. Although AECOM contends that the exhibits "merely augment [the] . . . testimonial evidence" presented at the hearing, the basis for the posttrial fee request lies in the exhibits themselves, which "provid[e] the precise numbers of . . . attorney hours, rates, and other data." (Doc. 347 at 2). Because Exhibits 1 and 2 are excluded, the Court declines to award AECOM fees for its posttrial work reflected in those exhibits.

### 2. Exxon's Exhibit 12

At the hearing, Exxon sought to introduce its prior Rule 68 Offer of Judgment as Exhibit 12 to argue that AECOM achieved only partial success in the litigation. (See Doc. 343-1 at 4–6). AECOM objected, noting both that Exxon had not included the exhibit in its briefing and that an offer of judgment is not an appropriate consideration in connection with a fee request. (Doc. 347 at 14–21).

Exhibit 12 reflects that on December 18, 2024, Exxon made a net, all-inclusive offer of judgment in the amount of $55 million in favor of AECOM. (Doc. 343-1 at 5–6). The offer required offsetting AECOM's recovery by Exxon's recovery and then adding all interest, fees, and costs to determine whether AECOM recovered more or less than the $55 million figure. (Id.). AECOM neither accepted nor rejected the offer. (Doc. 347 at 9).

The Court excludes Exhibit 12 as irrelevant. First, the exhibit is irrelevant because Exxon did not seek to invoke Rule 68's cost-shifting mechanism. The only permissible use of an unaccepted Rule 68 offer of judgment is to determine costs, and only when Rule 68's cost-shifting mechanism is triggered. *See* Fed. R. Civ. P. 68(b) ("Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 574 (6th Cir. 2009), *abrogated on other grounds by*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).

Exxon concedes that it "did not offer Exhibit 12 . . . to convince the Court that it beat a Rule 68 offer of judgment at trial," and that it is not "arguing for any cost- or fee-shifting." (Doc. 348 at 8). Because Exxon did not attempt to trigger Rule 68's only permissible use, the offer is irrelevant and therefore inadmissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Exhibit 12 is also irrelevant because it is not a proper Rule 68 offer and cannot be considered separately as a settlement offer. Rule 68 applies only to "offers made by 'a party defending against a claim,'" not to offers made by a party asserting claims. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 350 (1981) (quoting Fed. R. Civ. P. 68(a)). Moreover, Rule 68 does not permit the type of net-award calculations proposed by Exxon. *Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1439–40 (9th Cir. 1989) (net recovery and any potential offsetting credit "have no

8

place in the Rule 68 calculation"). As a plaintiff asserting claims and proposing a net-award structure, Exxon did not make a proper Rule 68 offer.

Exxon argues that the Court should nonetheless consider Exhibit 12 as a settlement offer under *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011), which permits consideration of settlement offers in fee proceedings. But Exhibit 12 is expressly titled "Rule 68 Offer of Judgment." The Court declines to disregard that designation or treat the document as something other than what it declares itself to be. *Ingram* did not involve a Rule 68 offer, and Rule 68 expressly prohibits admission of an unaccepted offer of judgment for any purpose other than determining costs. *See* Fed. R. Civ. P. 68.

Exxon's reliance on *Haworth v. State of Nevada*, 56 F.3d 1048 (9th Cir. 1995), is also misplaced. In *Haworth*, the defendant made a proper Rule 68 offer, which the plaintiffs rejected. *Id.* at 1050. The Ninth Circuit explained that "clients who refuse a Rule 68 offer should know that [doing so] may have a substantial adverse impact on the amount of attorney fees they may recover for services rendered after [the] . . . offer is rejected." *Id.* at 1052. The court held "that in an FLSA [Fair Labor Standards Act] case when a [valid] Rule 68 offer of judgment has been rejected, and judgment is obtained for less than the settlement offer, these circumstances must be considered by the district court in determining what fee is reasonable." *Id.*

The present case is materially different. No proper Rule 68 offer was made, and *Haworth*'s reasoning—limited to FLSA cases and to offers made by defendants—does not apply. The punitive cost- and fee-shifting consequences of Rule 68 therefore have no role here, and AECOM cannot be penalized for declining an offer that did not fall within Rule 68's framework.

Because Exhibit 12 is neither a proper Rule 68 offer nor offered for Rule 68's sole permissible purpose, it is inadmissible as irrelevant.

### B.    *Attorneys' Fees*

In diversity jurisdiction cases, "the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Riordan v. State Farm Mut. Auto. Ins.*, 589 F.3d 999, 1004 (9th Cir. 2009) (citation omitted). Montana follows the American Rule, under which "each party is ordinarily required to bear his or her own expenses absent a contractual or statutory provision to the contrary." *Mlekush v. Farmers Ins. Exch.*, 404 P.3d 704, 706–07 (Mont. 2017).

In this case, AECOM invokes a statutory exception to the American Rule found in Montana Code Annotated § 71-3-124. That provision mandates that in an action to foreclose a construction lien, "the court shall allow as costs the money paid and attorney fees incurred for filing and recording the lien and reasonable attorney fees in the district and supreme courts." Mont. Code Ann. § 71-3-124 (2025). The

Montana Supreme Court has emphasized that this language is mandatory and leaves courts no discretion to deny fees to a party that successfully establishes its lien. *Lewistown Miller Constr. Co. v. Martin*, 271 P.3d 48, 55 (Mont. 2011).

AECOM recorded a construction lien on Exxon's property on April 25, 2019. Under § 71-3-124, an award of attorneys' fees is required. Because AECOM is entitled to attorneys' fees, the Court must determine the appropriate amount.

Under Montana law, when attorneys' fees are authorized, the governing standard is reasonableness. *Gendron v. Mont. Univ. Sys.*, 461 P.3d 115, 119 (Mont. 2020). What constitutes a reasonable fee "must be ascertained under the facts of each case." *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003). District courts retain "a 'great deal of discretion in determining the reasonableness of the fee.'" *Wooten v. BNSF Ry.*, 387 F. Supp. 3d 1078, 1108 (D. Mont. 2019) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).

The lodestar figure—"the number of hours reasonably spent on the case" multiplied by "an appropriate hourly rate in the community for such work"—is presumed to represent a reasonable fee. *Gendron*, 461 P.3d at 119 (quoting *Tacke v. Energy W., Inc.*, 227 P.3d 601, 608 (Mont. 2010)). Montana courts routinely apply the lodestar method. *See id.* at 119–20; *Plath*, 64 P.3d at 992.

In assessing the reasonableness of the lodestar, the Montana Supreme Court directs courts to consider seven factors:

(1) the amount and character of the services rendered;
(2) the labor, time and trouble involved;
(3) the character and importance of the litigation in which the services were rendered;
(4) the amount of money or the value of the property to be affected;
(5) the professional skill and experience called for;
(6) the attorneys' character and standing in their profession; and
(7) the results secured by the services of the attorneys.

*Gendron*, 461 P.3d at 119–20. Some of these considerations are "subsumed in the lodestar calculation," particularly those bearing on the number of hours reasonably expended. *Audit Servs., Inc. v. Frontier-West, Inc.*, 827 P.2d 1242, 1250 (Mont. 1992) (applying four analogous factors identified by the United States Supreme Court). After accounting for those factors in the initial calculation, courts may adjust the lodestar upward or downward to account for factors not otherwise captured. *Id.*

While the seven factors are comprehensive, they are not exclusive. *Plath*, 64 P.3d at 991. Courts may also draw on their own knowledge and experience when determining a reasonable hourly rate. *See Ingram*, 647 F.3d at 928. They retain discretion to adjust the lodestar based on other relevant considerations. *Gendron*, 461 P.3d at 120. The lodestar remains only a "starting point." *Gates*, 987 F.2d at 1397.

AECOM contends that four lodestar factors—professional skill and experience, the attorneys' character and standing, the character and importance of the litigation, and the amount at stake—support its requested hourly rates. (Doc. 299 at 21). It likewise argues that four factors justify the hours expended: the

12

character and importance of the litigation, the amount and character of the services rendered, the labor, time, and trouble involved, and the results secured. (*Id.* at 28). Exxon touches on some of these considerations in asserting that out-of-forum counsel was unnecessary, but it does not substantively dispute AECOM's position on the lodestar factors apart from the results secured. On that point, Exxon maintains that AECOM's partial success warrants a reduced fee award. (Doc. 301 at 7–10).

The Court begins by identifying an appropriate hourly rate, then evaluates the hours reasonably expended, and finally adjusts the lodestar to reflect AECOM's partial success.

> 1.    *Appropriate Hourly Rate*

A reasonable rate is determined by reference to "prevailing market rates in the relevant community." *Ihler v. Chisholm*, 995 P.2d 439, 445 (Mont. 2000) (citation omitted). Accordingly, the Court must first identify the relevant community that provides the benchmark for assessing the reasonableness of the requested rate. Once the relevant community is established, the Court then determines the prevailing market rate for comparable legal services within that community. Those market rates inherently reflect several of the lodestar considerations, including the level of professional skill and experience required, the attorneys' character and standing, the significance of the litigation, and the amount of money or value of property at issue.

a.    *Relevant Community*

Typically, "the relevant community is the forum in which the district court sits." *Ihler*, 995 P.2d at 445. Courts may, however, apply out-of-forum rates when retaining out-of-forum counsel was reasonable. *Id.* This showing does not require a party "to submit affidavits from in-forum attorneys who refused to accept [its] case." *Id.* at 446. Rather, the party must demonstrate "that legal services with whatever degree of skill may have been reasonably required by their case were not readily available at a lower charge or rate in the area where the services were to be performed." *Id.*

In *Ihler*, the Montana Supreme Court upheld the district court's allowance of out-of-forum rates in a civil rights case because "adequate representation was not readily available in Montana." *Id.* The district court had recognized the case's complexity and duration, and the prevailing party "submitted numerous affidavits from attorneys in Montana which demonstrated that they were reluctant to accept civil rights cases such as this one." *Id.* "Notably, this evidence was not rebutted by the [d]efendants." *Id.* at 447.

*Ihler* also identified two approaches courts use when considering out-of-forum rates: (1) whether hiring out-of-forum counsel was reasonable, and (2) whether in-forum counsel was unavailable. *Id.* at 446. The Ninth Circuit applies the unavailability standard. In *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997),

14

for example, the court denied out-of-forum rates because the prevailing party failed to show that local counsel was unavailable—meaning "unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." (quoting *Gates*, 987 F.2d at 1405).

After considering both approaches, the Montana Supreme Court declined to adopt the Ninth Circuit's strict unavailability requirement. Instead, it held that "a prevailing party [only] has the burden of proving that resort to out-of-forum counsel was reasonable." *Ihler*, 995 P.2d at 446. Exxon's exclusive reliance on *Barjon* is therefore misplaced: *Barjon*'s focus on unavailability does not control. Evidence of unavailability may inform the reasonableness analysis, but it is not dispositive.

Under the Ninth Circuit's more demanding unavailability standard, this Court has recently concluded that out-of-forum counsel was reasonable. In *Site 2020 Inc. v. Superior Traffic Servs., LLC*, No. CV 21-63-M, 2025 WL 1260994, at *3 (D. Mont. May 1, 2025), the Court approved above-market rates because it was "not aware of any Montana law firm . . . currently representing parties in patent litigation matters of comparable complexity and scope without the specialized assistance of out-of-district counsel." Similarly, in *Wooten*, 387 F. Supp. 3d at 1108, where both parties were represented by out-of-state counsel, the Court upheld out-of-forum rates because it was "unaware of a Montana law firm . . . currently representing claimants in FRSA [Federal Railroad Safety Act] litigation at this level."

AECOM argues that rates outside the District of Montana should apply because "counsel experienced in complex construction litigation were necessary to analyze [the] issues for the [C]ourt and distill them into a format that could be understood by a jury." (Doc. 299 at 23–25). On that basis, AECOM contends that the relevant community should be defined as "the national bar that handles complex construction disputes." (*Id.* at 23). Exxon counters that AECOM "failed to present evidence justifying an award of out-of-market hourly rates" and maintains that any fee award should instead reflect "what AECOM's Montana lawyers charged for their work on this matter." (Doc. 301 at 16).

The Court agrees with AECOM that retaining out-of-forum counsel was reasonable and therefore defines the relevant community as the national bar experienced in complex construction disputes. Although the default rule ties the relevant community to the forum in which the district court sits, the circumstances here justify a departure. As in *Ihler*, adequate representation was not readily available in Montana. This case presented highly technical issues that required attorneys with specialized expertise in construction law. Pillsbury and Polsinelli possess both that expertise and the institutional resources necessary to litigate a dispute of this magnitude. Mr. Lewis of Polsinelli, for example, described his recent work with Stephen Gurr on a four-week, $265 million complex construction trial in

16

federal court in Colorado—experience that underscores their specialized skill set and readiness to handle the demands of this case. (Doc. 345 at 134–35).

Although the governing standard is reasonableness, and unavailability is only a factor, several independent considerations establish that local attorneys were in fact unavailable to represent AECOM. Testimony from Montana practitioners confirms that comparable in-forum resources were not available, as local firms lacked the expertise, specialization, and capacity necessary to handle a dispute of this complexity. Mr. Tarlow testified that, based on his decades of experience in construction law, no Montana firm had the capacity to manage a case of this magnitude. (*Id.* at 108–16). He could not identify a single Montana lawyer who had tried a complex construction case of this nature and explained that even his own ten-lawyer firm lacked the resources to do so. (*Id.*). Mr. Crist similarly testified that the matter exceeded the complexity of any case he had handled and that his small firm lacked the necessary capacity. (*Id.* at 127–28).

Conflicts further narrowed the pool of available in-forum counsel. Ms. LoBue identified approximately seven Montana firms that AECOM contacted, and the Court finds that list to be a reasonable sampling of the state's legal community. (*See id.* at 89–92). Exxon pointed to additional firms during the hearing, but it offered no evidence that any would have accepted the representation. (*Id.* at 92). AECOM was not required to contact every firm in the state. The firms it approached were

17

either unable or unwilling to take on the matter, and many were conflicted because they represented subcontractors involved in the dispute. Exxon's suggestion that those conflicted attorneys could have represented AECOM after their clients settled is incorrect; switching sides would have violated the Rules of Professional Conduct. *See* Mont. Rules of Pro. Conduct r. 1.9(a) (Mont. Bar Ass'n 2004) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

Exxon also contends that the capable representation it received from two Montana firms demonstrates that competent in-forum counsel was both available and equipped to represent AECOM. (Doc. 301 at 13–14). That argument is outweighed by the rest of the evidence—particularly the conflicts—demonstrating that in-forum counsel was not available to represent AECOM. And in any event, the standard is reasonableness, not strict unavailability. AECOM demonstrated that legal services with the degree of skill reasonably required by its case were not readily available at a lower rate in Montana.

AECOM was therefore justified in looking outside of Montana. Because its decision to retain out-of-forum counsel was reasonable, the relevant community is the national bar handling complex construction disputes.

b.    *Prevailing Market Rate*

Because the relevant community is the national bar that handles complex construction disputes, the Court must apply an hourly rate consistent with that specialized market.    The party seeking fees bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).    Evidence that clients actually pay those rates "constitutes additional 'relevant proof of the prevailing community rate.'" *Site 2020 Inc. v. Superior Traffic Servs., LLC*, No. CV 21-63-M, 2024 WL 5399254, at *16 (D. Mont. Oct. 25, 2024) (citing *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB, 2015 WL 3879634, at *5 (C.D. Cal. May 27, 2015)).

Exxon's argument relies primarily on comparing AECOM's counsel's rates to those of in-forum attorneys, and it offers little evidence that the out-of-forum rates fall outside the norm for the relevant community.    Pillsbury and Polsinelli—firms located on opposite sides of the country but with similar rates—regularly represent clients in complex construction matters across multiple jurisdictions, and their clients pay those rates.    (Doc. 299 at 26).    The declarations and testimony of Ms. LoBue, Mr. Gurr, and Mr. Tarlow further confirm that the rates charged by Pillsbury and Polsinelli are reasonable and consistent with those charged by construction

litigators with comparable experience and practice.  (Doc. 299-2 at 23; Doc. 299-16 at 4; Doc. 299-18 at 5–9).

The Court therefore concludes that AECOM's counsel's rates are in line with those prevailing in the national bar for complex construction disputes handled by lawyers of reasonably comparable skill, experience, and reputation.

### 2. Number of Hours

Excluding the portion of the request attributable to posttrial motions, AECOM seeks reimbursement for 16,551.90 hours of attorney time.  (Doc. 302-1 at 5; Doc. 349 at 20).  In its original response brief, Exxon did not challenge the number of hours AECOM reported.  (*See* Doc. 301).  In supplemental briefing on the posttrial fee request, however, Exxon argues that even without a specific objection, the Court must independently assess the reasonableness of AECOM's hours.[2]  (Doc. 348 at 5–7).

"[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  At the same time, "courts 'may not uncritically accept a fee request, but must review the

---

[2] Exxon also argues that AECOM's posttrial-motion fee request should be reduced because of what it characterizes as excessive redactions.  (Doc. 346 at 11–15).  Because the Court is not awarding posttrial fees, and because Exxon did not raise this objection in its original response, the Court declines to consider it with respect to the original fee request, aside from reviewing the billing records and concluding that the hours were adequately documented.

time billed and assess whether it is reasonable in light of the work performed and the context of the case.'" *Hargis v. Pac. Senior Living Mgmt. LLC*, No. 2:22-CV-6989-MCS, 2025 WL 1140158, at *3 (C.D. Cal. Mar. 4, 2025) (quoting *Open Source Sec., Inc v. Perens*, No. 17-CV-04002, 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018)). Courts must exclude "hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal citation and quotation marks omitted). The party seeking fees "should make a good[-]faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

After reviewing AECOM's extensive billing records, the Court concludes that the hours claimed are reasonable. The records reflect the complexity and duration of the litigation, as corroborated by testimony from counsel and expert witnesses. The amount and character of the services rendered, the labor, time, and trouble involved, and the character and importance of the litigation all weigh in favor of finding AECOM's reported hours reasonable.

The evidence also shows that AECOM undertook meaningful internal review to limit unnecessary time. Ms. LoBue testified that she reviewed each time entry before billing AECOM to identify inefficiencies, excessive staffing, or nonbillable items such as travel time. (Doc. 345 at 38–40). When preparing its fee request to

Exxon, AECOM further reduced its submission, including by removing all hours billed by timekeepers who recorded 160 hours or fewer. (*Id.* at 40). Given Exxon's lack of specific objections to the original hours, AECOM's detailed documentation and self-scrutiny, and the Court's own independent review, the Court concludes that the reported hours are reasonable for purposes of the lodestar calculation.

### 3.    *Adjustment for Results Obtained*

In most cases, the "results obtained" factor is only one consideration within the broader lodestar analysis that a district court must weigh in determining a reasonable fee. *Plath*, 64 P.3d at 992. Under "appropriate circumstances," however, the Montana Supreme Court has recognized that the results obtained may assume "particular importance." *Id.* In some situations, it may even become "the dominate consideration," especially "when a party is deemed prevailing even though the party succeeded on only some claims for relief." *Id.*

When claims share "a common core of facts or are based on related legal theories, and it would be too difficult to divide hours expended on a claim-by-claim basis," a court may instead "focus on the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation." *Id.* (citing *Audit Servs.*, 827 P.2d at 1250). If a party achieves "excellent results," counsel is entitled to "a full compensatory fee." *Audit Servs.*, 827 P.2d at 1250. Conversely, where

success is limited, "a full compensatory fee may be an excessive amount even where the claims were interrelated." *Id.*

Although the Montana Supreme Court has held that Montana's construction lien statute "does not require a proportional reduction in attorney fees where judgment is for a lesser amount than was claimed in the lien," this does not eliminate the district court's discretion to adjust the fee award when the amount recovered is significantly less than the amount sought. *LHC, Inc. v. Alvarez*, 160 P.3d 502, 507 (Mont. 2007) (rejecting a mandatory reduction of fee award in proportion to plaintiff's success to the lien amount); *Audit Servs.*, 827 P.2d at 1250.

Here, the jury found in favor of AECOM on its breach of contract, PPA, and account stated claims, and in favor of Exxon on its breach of contract claim. (Doc. 265). Because the PPA claim was later set aside as a matter of law, AECOM ultimately did not prevail on that claim. (Doc. 309 at 14). As a result, AECOM did not prevail on all of its own claims and lost on one of Exxon's. Nonetheless, both parties appear to agree the claims are inextricably intertwined, making dividing hours on a claim-by-claim basis infeasible. (*See* Doc. 299 at 20; Doc. 301 at 7–8).

Because AECOM was the prevailing party but did not succeed on every claim, the results obtained take on heightened importance. Even though the claims were interrelated, the Court agrees with Exxon that AECOM's success was limited in context of the case, making a full compensatory fee excessive. Although several

23

other lodestar factors support AECOM's request, the results obtained justify a downward adjustment.

AECOM initially asserted a lien of approximately $132 million and sought $102 million in damages at trial.[3] (Doc. 151 at 12; Doc. 339 at 79, 106, 108, 127–29). The jury awarded $64 million to AECOM, and after netting the award, AECOM recovered $44 million. (Doc. 265 at 3; Doc. 312 at 2). Thus, AECOM recovered 43 percent[4] of the amount it sought at trial.

Given that AECOM recovered 43 percent of the damages it requested, the Court finds it reasonable to award 43 percent of the attorneys' fees sought. Applying that percentage to AECOM's request of $12,123,027 (excluding posttrial fees that the Court has disallowed), AECOM is entitled to $5,212,902 in attorneys' fees.[5]

C.    Costs

Finally, AECOM seeks $5,953,366 in costs, consisting of $1,057,874 in e-discovery charges and $4,895,492 in expert witness expenses. (Doc. 349 at 20). AECOM supports its request with spreadsheets and summaries of its business records. (Doc. 299-5 at 5–6; Docs. 299-10, 299-11). Although state law governs

---

[3] After reviewing the closing-argument transcript (Doc. 339) and the jury instructions (Doc. 268), the Court concludes that an even $102 million accurately reflects the amount AECOM asked the jury to award. Exxon likewise described AECOM's trial demand as $102 million in its original response (Doc. 301 at 8), and AECOM did not dispute that characterization in its reply (*see* Doc. 302 at 4–7). Using the $102 million figure accords with the Court's obligation "to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

[4] The Court rounds the calculated figure of 43.14% to the nearest whole number.

[5] The Court rounds the calculated amount of $5,212,901.61 to the nearest whole number.

whether attorneys' fees are recoverable, federal law generally controls the award of costs in diversity cases. *Aceves v. Allstate Ins.*, 68 F.3d 1160, 1167 (9th Cir. 1995). But when a state statutory scheme makes cost recovery part of a substantive right to full compensation, those state-law costs may be recovered in federal court. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1064–65 (9th Cir. 2003).

Here, AECOM argues that the PPA authorizes its cost recovery. (Doc. 299 at 30–32). Because AECOM's PPA claim failed as a matter of law (Doc. 309 at 14), and because the construction lien limits recoverable costs to "the money paid . . . for filing and recording the lien," Mont. Code Ann. § 71-3-124, AECOM's only remaining avenue for recovery would be federal law. Yet AECOM expressly states that "it is seeking an award of litigation costs—including those incurred for experts and e-discovery—under the Montana PPA" (Doc. 302 at 14), and that it cited 28 U.S.C. § 1920 "only to provide examples of the categories of costs that are generally recoverable in federal court, not as a basis for arguing that the statute allows recovery of e-discovery and expert costs" (*id.* at 14 n.5).[6]

---

[6] Even if AECOM had relied on 28 U.S.C. § 1920, the categories of expenses it seeks would still fall outside of what federal law permits. In *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 341 (2019), the Supreme Court held that § 1920 and its companion statute governing witness fees, 28 U.S.C. § 1821, "do not authorize an award for expenses such as expert witness fees [and] e-discovery expenses." Under this framework, e-discovery expenses are not taxable, and witness fees are limited to a $40-per-day attendance fee plus mileage—none of which AECOM included in its request or in a separate bill of costs. *See* 28 U.S.C. § 1821.

Because AECOM only seeks costs solely under the PPA, and that claim failed as a matter of law, the Court declines to award costs.

## III.    Conclusion

IT IS HEREBY ORDERED that AECOM's Motion for Attorneys' Fees and Costs (Doc. 298) is GRANTED in part and DENIED in part, consistent with the analysis above.  AECOM is awarded $5,212,902 in attorneys' fees recoverable from Exxon.  The Court declines to tax costs in AECOM's favor.

DATED this _____ 9th day of March, 2026.

SUSAN P. WATTERS
United States District Judge